IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JANICE M. NETTLES, ) | Civil Action No. 3:04-999-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MAGISTRATE JUDGE'S** |
| COMMISSIONER OF SOCIAL SECURITY,) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On August 28, 2001, Plaintiff applied for DIB. Her application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). Plaintiff filed a prior application or DIB on September 8, 1998.[1] The September 1998 application and the August 2001 application were joined. After a hearing held December 13, 2002, at which Plaintiff appeared and testified, the ALJ issued a decision dated January 30, 2003, denying

---

[1]Plaintiff filed a prior application for DIB on September 8, 1998. Tr. 118-122. That application was denied initially and upon reconsideration. Tr. 67-68, 98-99. Following an administrative hearing on March 9, 2000, an ALJ found that Plaintiff was not disabled. Tr. 11-20, 31-60. The Appeals Council denied Plaintiff's request for review and she sought review in this Court. Upon motion of Commissioner, that case (Civil Action Number 3:01-3487-MBS-JRM) was remanded under sentence four of 42 U.S.C. § 405(g).

benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was forty eight years old at the time she alleges she became disabled and fifty-three years old at the time of the ALJ's decision. She has education up to the eleventh grade and past relevant work as a child care worker and housekeeper. Plaintiff alleges disability since November 1, 1997, due to back and knee pain and thyroid disease.

The ALJ found (Tr. 337-338):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for light work, reduced by restrictions which require no climbing; no repetitive bending, stooping, or squatting; no foot or leg pedals or controls; no exposure to vibration; no repetitive twisting and turning; and no

>   prolonged standing or walking, i.e., no more than a total of four [hours a] day or more than two hours at one time.
>
> 8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> 9. The claimant is "closely approaching advanced age" (20 CFR § 404.1563). She was a "younger" individual on the alleged onset date. She has a "limited," 11th grade, education, and an unskilled work history[.]
>
> 10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).
>
> 11. Although the claimant's nonexertional limitations do not allow her to perform the full range of light work, using Medical Vocational Rules 202.17 and 202.10 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a garment sorter, garment folder, and cloth folder.
>
> 12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

On March 12, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on March 31, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred in failing to find that she met the listing of impairments ("Listings"), Appendix 1, Subpart P, Regulations No. 4, at § 1.03 or § 1.08; (2) the ALJ failed to properly consider her combination of impairments; (3) the ALJ failed to properly consider the opinion of her treating physician; and (4) the ALJ improperly found that she was a "younger individual" and erred in failing to apply Rule 201.09 of the medical-vocational guidelines (the "Grids" - see generally 20 C.F.R., Part 404, Subpart P, Appendix 2) to find her disabled.

    A.    Substantial Evidence

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. The Commissioner argues that substantial evidence, including the medical and non-medical record, supports the ALJ's decision.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

4

The ALJ's determination that Plaintiff could perform a range of light work despite her impairments is supported by substantial evidence. Plaintiff suffers from Graves' disease[2] and hypertension. Her hypertension is reasonably controlled by medication. Tr. 201, 296, 484. Plaintiff received radioactive iodine treatment for her Graves disease and on June 25, 1998, her disease was clinically improving. Dr. Gerald B. Miele found improvement in Plaintiff's thyroid symptoms and noted a marked decrease in neck swelling and normal thyroid size in September and November 1998. Tr. 217, 224. On May 20, 1999, Dr. William Ward noted that Plaintiff's thyroid condition had stabilized. Tr. 265-266. At the first hearing, Plaintiff testified that her Graves' disease and hypertension were under control. Tr. 38. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Although Plaintiff has knee and back problems, the ALJ decision that she could perform a range of light work is supported by substantial evidence including the medical records of her treating physicians. On November 21, 1997, Dr. A. Cecil Bozard, Jr., an orthopedist with Pee Dee Orthopaedic Associates ("PDOA"), diagnosed a torn lateral meniscus of Plaintiff's left knee with possible osteochondritis dissecans[3] of the lateral condyle. Tr. 264. On December 10, 1997, Plaintiff underwent left knee arthroscopy with arthroplasty of the lateral femoral condyle and

---

[2]Graves' disease is a "syndrome of diffuse hyperlasia of the thyroid…Characteristics include hyperthyroidism[], usually with goiter and ophthalmic symptoms []." Dorland's Illustrated Medical Dictionary 534 (30th ed. 2003).

[3]Osteochondritis dissecans is "an inflammation of both bone and cartilage" which results "in the splitting of pieces of the cartilage into the joint, particularly the knee joint…" Dorland's at 1333.

5

partial lateral meniscectomy.[4] Dr. Bozard also performed a resection of the underlying necrotic bone. Tr. 129-130. On January 21, 1998, Plaintiff was seen by Dr. Bozard for follow-up care. Dr. Bozard noted that Plaintiff was "getting along reasonably well" and instructed her to use a walker for three weeks. Tr. 263, 468. On April 13, 1998, Plaintiff was diagnosed as having an osteonecrotic lesion of the femoral condyle. She underwent arthroscopy chondobrasion on her left knee on April 15, 1998. Tr. 124-125. Plaintiff was noted to be doing well on April 20, 1998, and was instructed to use crutches or a walker for a few days on April 29, 1998. Tr. 262, 467. On June 15, 1998, Plaintiff was examined by Dr. Bozard for bilateral knee tenderness. He injected Depo Medrol and Xylocaine in Plaintiff's left knee and scheduled arthroscopy of her right knee. Tr. 261. On September 2, 1998, Dr. Bozard diagnosed Plaintiff with degenerative disc disease of her lumbar spine, but found she had negative straight leg raise testing and normal neurological functioning. Tr. 260. On October 1, 1998, Plaintiff underwent arthroscopy of her right knee. Tr. 147. She was discharged with restriction to light activity. Tr. 180. Dr. Bozard noted that Plaintiff was doing well on October 7, 1998, she had only minimal discomfort of her knee, and could begin range of motion exercises. Tr. 259. Plaintiff reported complaints of left knee pain on October 14, 1998. Dr. Bozard found that Plaintiff was doing very well with regard to her right knee and noted that x-rays of her left knee showed no evidence of osteonecrosis. Tr. 258.

After Dr. Bozard's retirement, Plaintiff was treated by Dr. Michael Mendes and Dr. W. S. Edwards, also of the PDOA. On August 31, 1999, Dr. Edwards found that Plaintiff stood erect

---

[4]Meniscectomy is an "excision of an intra-articular meniscus, as in the knee joint." Id. at 1127.

with normal lumbar lordosis; had forward flexion to 50-60 degrees with "poor effort" upon examination; full bilateral hip motion; full bilateral ranges of motion of her knee; normal neurological functioning; normal reflexes; straight leg raising negative for sciatic stretch signs; and absence of lower extremity clubbing, cyanosis, edema, or atrophy. Tr. 288-289. On November 2, 1999, Plaintiff complained of back pain. Dr. Edwards noted normal neurological functioning of her lower extremities and prescribed conservative care. Tr. 286. On January 7, 2000, Dr. Mendes noted that Plaintiff walked with mild antalgia on the right. Physical examination revealed normal knee and hip ranges of motions. X-rays of Plaintiff's knees showed only mild degenerative changes which were not severe enough to warrant a total knee replacement. Dr. Mendes injected Plaintiff's right knee with Depo Medrol, Dexamethasone, and Marcaine. Tr. 285. On March 8, 2000, Dr. Mendes completed a Medical Source Statement in which he opined that Plaintiff could lift twenty pounds frequently; could stand and/or walk for six hours in an eight hour workday (and three hours without interruption); her sitting was not affected by her impairments; she could climb, stoop, crouch, kneel, and crawl occasionally; she could balance frequently; and she could reach, handle, feel, push/pull, see, hear, and speak without restrictions. Tr. 302-304. On March 12, 2000, Dr. Edwards completed a Medical Source Statement in which he opined that Plaintiff retained the capacity to lift twenty pounds frequently; could stand or walk for four hours in an eight-hour workday (and two hours without interruption); could sit for four hours in an eight hour day; could occasionally climb, balance, stoop, crouch, kneel, and crawl; could reach, handle, feel, see, hear, and speak; had no restrictions on being exposed to heights, machinery, temperature extremes, chemicals, dust, noise, fumes, and humidity; could not push or pull; and was restricted from exposure to vibration. Tr. 292-294.

Plaintiff was treated by Dr. Michele Scott and Dr. Norma Yucht at Timmonsville Family Care Center from November 1996 to May 1999. Tr. 197-209, 301. On May 1, 1998, Dr. Scott noted that Plaintiff had an absence of extremity edema; stable hips; good extremity strength; intact reflexes; good flexibility in all directions; and absence of any atrophy, wasting, or other abnormalities of the leg muscles. Tr. 201. On February 3, 1999, Plaintiff complained of back pain. Dr. Scott noted that Plaintiff had a straight lumbar spine; no crepitus or local tenderness; stable hips; the absence of any atrophy, wasting, or other abnormalities of the leg muscles; normal strength and reflexes; and good flexibility in all directions. Dr. Scott prescribed Vicodin and diagnosed Plaintiff with low back pain with some soft radicular signs. Tr. 200. On February 8, 1999, Dr. Scott noted that Plaintiff had good extremity strength and intact reflexes, but some soft positive straight leg raising. Dr. Scott diagnosed lumbar radiculopathy and prescribed Vicodin. Tr. 199. On February 22, 1999, Dr. Scott noted an absence of any neck crepitus, deformity, or signs of trauma or infection. She diagnosed left leg pain, hyperthyroidism, and hypertension. Tr. 198.

Plaintiff was treated by Dr. Eddie Negron of Timmonsville Family Care and Carolinas Internal Medicine from November 1999 to February 2001. Tr. 296-298, 483-486. On December 20, 1999, Dr. Negron found that Plaintiff's hypertension was well controlled; she had normal neurological functioning; and there was no extremity clubbing, cyanosis, or edema. Tr. 296-297. On October 6, 2000, Plaintiff complained to Dr. Negron of low back pain. Dr. Negron noted that Plaintiff's hypertension was improved and she did not have extremity edema. He prescribed Celebrex and Prinzide. Tr. 484. On February 16, 2001, Dr. Negron noted that Plaintiff

complained of chronic low back pain and that she had reasonably controlled hypertension.  He prescribed Prinzide and Synthroid.  Tr. 483.

From June to September 2001, Plaintiff was treated by Dr. John Mattheis at Carver Community Health Center.  Tr. 501-505.  On June 14, 2001, Dr. Mattheis noted that Plaintiff had negative straight leg raise testing, normal ranges of motion, normal neurological functioning, and an absence of extremity edema.  Tr. 503.  On July 12, 2001, Plaintiff was reportedly doing well.  Dr. Mattheis noted the absence of any weakness or neurological deficits.  Tr. 502.  On August 20, 2001, Plaintiff complained of knee and back pain.  Dr. Mattheis found symmetrical deep tendon reflexes, and the absence of joint swelling, knee crepitus, joint laxity, or neurological deficits.  Tr. 501.

Plaintiff was treated at Pee Dee Health Care from October 2001 to March 2002.  A bone density test was normal on January 2, 2002.  Tr. 401.  On January 25, 2002, a spine and hip x-ray showed some slight wedging of the L5 vertebral body, but no evidence of sublaxation, fracture, or disc space narrowing.  Tr. 399.  On February 6, 2002, a lumbar MRI showed no evidence of focal disc bulge and only mild lower lumbar hypertrophy.  Tr. 398.

The ALJ's decision is also supported by consultative examinations.  Plaintiff was examined by Dr. George R. Dawson, III, an orthopaedist, on November 16, 1998.  She reported that when she walked fast, her knees bothered her, but she denied any problems with knee swelling. Dr. Dawson noted that Plaintiff walked slowly; had no tenderness in her lumbar spine, buttocks, thighs, or calves; could bend over and touch her mid tibias; could hyper extend her low back to fifteen degrees; could lean twenty degrees to the right without subjective complaints of pain; and could walk on her heels and toes if assisted.  She had 2+ equal knee and ankle jerk reflexes;  no

motor or sensory deficits in her legs; and could do 75 degree straight leg raises. Dr. Dawson noted no medial or lateral instability of either knees. X-rays revealed that both knees were essentially normal. Dr. Dawson diagnosed history knee arthralgia and probable early degenerative disc disease of Plaintiff's lumbar spine. Tr. 193-195.

On May 20, 1999, Plaintiff was examined by Dr. William Ward, who noted that Plaintiff's thyroid condition had stabilized and that she was able to ambulate without a walker. He found tenderness in Plaintiff's lumbosacral musculature and over her lumbar spine, normal neurological functioning, the ability to finely manipulate her upper extremities, normal upper extremity ranges of motion, an absence of lower extremity edema, and the ability to rotate twenty degree to both the right and left and to flex forward to ten degrees. Tr. 265-267.

On July 24, 2004, Plaintiff was examined at Florence Orthopaedic Associates. She had no effusion in either knee, was able to ambulate, and had fine gross movement in her hands. Plaintiff had no muscle atrophy and no joint instability. An MRI of Plaintiff's lumbar spine on June 21, 2002 was reported as normal. She was diagnosed with a congenital deformity of her L5 vertebra and bilateral knee pain of unproven etiology. Tr. 512-514.

Plaintiff was treated by Dr. Lars Reinhart at McLeod Regional Medical Center Emergency Room on August 8, 1999. Dr. Reinhart noted that Plaintiff had 5/5 strength throughout, intact sensation, 2+ bilateral deep tendon reflexes, normal neurological functioning, and normal gait. Tr. 472. Dr. Reinhart prescribed Ibuprofen and Percocet. Tr. 473.

The ALJ's decision is also supported by the opinion of the State agency physicians and psychologists who reviewed Plaintiff's medical records and completed residual functional capacity ("RFC") assessments. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of

10

fact made by State agency … [physicians ]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On July 2, 1999, Dr. Richard Weymouth completed a physical residual functional capacity ("PRFC") assessment. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, push and pull within her lifting capacity; occasionally climb, balance, stoop, kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. Tr. 73-80. Dr. Weymouth conducted another PRFC assessment on October 12, 2001. He opined that Plaintiff had no exertional limitations; could balance, stoop, crouch, and crawl frequently; climb and kneel occasionally; and had no manipulative, visual, communicative, or environmental limitations. Tr. 526-533. On July 22, 2002, Dr. Darla Mullaney performed a PRFC assessment. She found that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour day; push and pull within her lifting capacity; and only occasionally climb. Tr. 516-523.

    Plaintiff's credibility is undermined by evidence that she failed to follow treatment and other inconsistencies in the record. See English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(b) . In October 2000, Plaintiff self-adjusted her thyroid medications (Synthroid and Levoxyl) and stopped taking them because she felt she did not need them. Tr. 484. She again stopped taking her Synthroid in February 2001. Tr. 483. Dr. Edwards noted that Plaintiff gave "poor effort" upon examination. Tr. 288. Her physical therapist also noted mildly inconsistent effort. Tr. 542.

Non-medical evidence also supports the ALJ's decision. Plaintiff reported that she went to church on Sundays and sang in the choir every other Sunday, visited relatives or friends about once per week; did light housework such as dusting, vacuuming once per day for ten minutes, washing dishes, and doing some laundry. She also read, drove a car, took care of her houseplants, walked on occasion, and often walked to her sister's house which was approximately a block away. Tr. 43-46, 360-362, 444-445, 513.

### B. Combination of Impairments

Plaintiff alleges that the ALJ failed to properly consider all of her impairments, including her degenerative disc disease, knee problems, and hyperthyroidism. The Commissioner argues that the ALJ adequately considered Plaintiff's impairments in combination.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ specifically considered all of Plaintiff's impairments, but found that these impairments did not meet or medically equal one of the listed impairments. Tr. 337. In the "Evaluation of the Evidence" section of his decision, the ALJ considered Plaintiff's bilateral knee osteonecrosis, degenerative knee changes, degenerative changes of her lumbar spine, Graves'

disease, hypertension, and heart problems (Tr. 331-334). See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently considered impairments in combination where he separately discussed each impairment, the complaints of pain and daily activities, and made a finding that the complainant's impairments did not prevent performance of past relevant work). The ALJ also considered Plaintiff's limitations from her combination of impairments in his hypothetical to the VE. Specifically, the ALJ asked the VE to consider that, because of Plaintiff's exertional and non-exertional impairments including pain, she would retain the RFC to engage in light, unskilled work that would not require any climbing; would not require repetitive bending, stooping, or squatting; and would not require the use of any foot or leg pedals or controls. Further, the ALJ stated that the jobs identified should not require any repetitive twisting and turning, should not require exposure to vibration, and should not require any prolonged standing or walking (meaning no more than four hours a workday and no more than two hours at a time). In response to questioning from Plaintiff's attorney, the VE testified that the jobs identified would not be impacted by Plaintiff's intellectual level as measured by testing. Tr. 367-368, 370-372.[5]

   C.   Listings

       Plaintiff alleges that the ALJ failed to properly meet the Listings at § 1.03 or § 1.08. The Commissioner argues that Plaintiff fails to show that she met or equaled one of the Listings.

---

[5] Plaintiff underwent a psychological evaluation by psychologist Dr. S.A. Wurster on June 12, 1999. Testing revealed overall mental functioning in the low average range of intelligence with her verbal scale score indicating mental capabilities well in the average range of intelligence. She read at a fifth grade level and performed arithmetic at a fourth grade level. Dr. Wurster opined that Plaintiff was mentally capable of performing routine sedentary-type tasks. Tr. 270-271.

13

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a).

"Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Finally, a claimant has to establish that there was a "twelve-month period…during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Plaintiff fails to show that she met or equaled the Listing at § 1.03[6] because she fails to show that she had an inability to ambulate effectively. She was only prescribed a walker for a few weeks after her December 1997 surgery and then was instructed to use crutches or a walker for a few days in April 1998. Tr. 262-263, 467-468. Dr. Ward noted that Plaintiff had on "some occasions" needed a walker, but that she did not have one when he examined her in May 1999, but that she could ambulate when he examined her. Tr. 265. In March 2000, Dr. Mendes opined that Plaintiff could walk for six hours in an eight-hour workday and Dr. Edwards opined that Plaintiff could walk or four hours in an eight-hour workday. Tr. 302-304. Dr. Waddy Barrood testified as a medical expert at the hearing and opined that Plaintiff did not meet or equal one of the Listings. Tr. 345. State agency physicians opined that Plaintiff could walk for six hours in an eight-hour workday. Tr. 74, 517. Plaintiff stated that she could walk to her sister's house, a distance of about a block and would walk around outside on occasion. Tr. 360-361.

---

[6]Section 1.03 requires:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. The ability to ambulate effectively requires that:

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

15

Plaintiff fails to show that she met or equaled the Listings at §1.08[7] because she fails to show that she required continued surgical management after her surgeries in 1997 and 1998. In January 2000, Dr. Mendes opined that Plaintiff's knee symptoms were not severe enough to warrant a total knee replacement. Tr. 285.[8]

D.     Treating Physician

Plaintiff alleges that the ALJ erred in failing to accord proper weight to the opinion of Dr. Bozard. She appears to argue that his opinions are supported by the findings of Dr. Ward, Dr. Edwards, and an emergency room physician. The Commissioner argues that Dr. Bozard's opinions are not consistent with his own findings or other substantial evidence in the record.

On January 15, 1999, Dr. Bozard completed a physician's statement for a private insurer in which he opined that Plaintiff could not stand or walk during the workday; could only sit for three to five hours in an eight hour workday; and could never bend, twist, squat, or climb. Tr. 275-276. In June 1999, Dr. Bozard completed a statement for a private insurer in which he opined that Plaintiff would never be able to return to work. Tr. 274.

---

[7]Section 1.08 requires:
Soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset. Major function of the face and head is described in 1.000.
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.08.

[8]Plaintiff also fails to show that she met or equaled a Listing based on her back impairment because she has not shown that she experienced the sensory or reflex loss required under § 1.04. See Tr. 194, 200, 288, 472, 501, and 512-513, and 559. MRIs of Plaintiff's lumbar spine in March 1999 and February 2002 were normal. Tr. 255, 398.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to place little weight on Dr. Bozard's opinion is supported by substantial evidence. Dr. Bozard's opinion is not well supported by his own treatment notes. He found that Plaintiff was doing well after each of her surgeries. Tr. 258-259, 262-263. Dr. Bozard noted Plaintiff had negative straight leg raising and normal neurological functioning. Tr. 260.

Dr. Bozard's opinion of disability is also not supported by the findings and opinions of other treating physicians who found that Plaintiff had normal reflexes, flexibility, and neurological functioning; good strength; and the absence of any atrophy, wasting, or other abnormalities of her leg muscles. See Tr. 199-200, 297, and 501-503. Dr. Edwards found Plaintiff had full bilateral knee range of motion, normal neurological functioning, negative straight leg raising, and no atrophy. Tr. 286-288. He found that Plaintiff could lift twenty pounds frequently and stand or walk for four hours in an eight hour workday. Tr. 293. Dr. Mendes opined that Plaintiff could walk for six hours in an eight hour workday and could lift twenty pounds frequently. Tr. 302-304.

Consultative examiners also found normal reflexes, neurological functioning, and upper extremity ranges of motion; the absence of leg, motor, or sensory deficits; and the absence of atrophy or joint instability. Tr. 194, 267, 472, and 512-513. The opinions of the State agency physicians also supported the ALJ's decision, as discussed above.

E.     Grids

Plaintiff alleges that the ALJ erred as a matter of law in finding Plaintiff to be a "younger individual" who was capable of performing light work with restrictions and in failing to apply Grid Rule 201.09. The ALJ did not err, because he properly noted that Plaintiff was a younger individual at the time she alleged she became disabled and was closely approaching advanced age at the time of the ALJ's decision. The Grid Rules (202.17 and 202.10) for both of these categories directs a finding of not disabled. The ALJ, who only used the Grids as a framework for decision making, did not err in not applying 201.09 because that rule applies to a person who has a RFC for sedentary work.

CONCLUSION

18

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

July 5, 2005
Columbia, South Carolina